**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOSE E. RAMOS,                                          :
    *Plaintiff*,                                      :
                                 :
    v.                                                 :        Case No. 3:18-cv-744 (VAB)
                                   :
DANNEL P. MALLOY, *et al.*,                    :
    *Defendants*.                                 :

## INITIAL REVIEW ORDER

Jose E. Ramos ("Plaintiff"), is incarcerated at the MacDougall-Walker Correctional

Institution ("MacDougall-Walker"). He has filed a civil Complaint under 42 U.S.C. § 1983

against Governor Malloy, Commissioner Semple, Warden Mulligan, Captain Hartnett, and

Lieutenant Roy (collectively, "Defendants"). Compl., ECF No. 1 (May 2, 2018).

Mr. Ramos alleges that, on April 10, 2018, Warden Mulligan, Captain Hartnett, and

Lieutenant Roy confiscated property from his cell at MacDougall-Walker in violation of his

rights under the First and Fourteenth Amendments. He seeks declaratory and injunctive relief

and compensatory and punitive damages from Defendants in their individual and official

capacities.

For the reasons set forth below, the Court will **DISMISS** Mr. Ramos's Complaint, but

will permit Mr. Ramos to file a motion to amend the complaint by **September 11, 2020**.

At that time, Mr. Ramos should also file a Notice setting forth any attempts that he made,

prior to filing this action, to exhaust administrative remedies as to each claim in the amended

complaint, using the Department of Correction's applicable grievance procedures set forth in

Administrative Directive 9.6.

## I.   FACTUAL BACKGROUND

On April 8, 2018, Mr. Ramos allegedly submitted a complaint naming some of the defendants in this action, including Warden Mulligan, to a Department of Correction employee for e-filing to this Court. Compl. ¶ 9.

On April 10, 2018, allegedly within hours of when a Department of Correction employee e-filed Mr. Ramos's complaint and it was received by this Court for filing, two officers who worked in Lieutenant Roy's Intelligence Unit allegedly asked him to step out of his cell. *Id.* ¶ 10. One officer allegedly searched Mr. Ramos, and both officers allegedly searched his cell, read his legal materials and correspondence, and stole an unidentified number of pages of legal materials. *Id.* ¶¶ 11–12. The officers allegedly provided Mr. Ramos with a receipt for the items confiscated from his cell and allegedly claimed that the order to search his cell and confiscate legal materials had come from the "higher ups." *Id.* ¶¶ 13–14. They allegedly suggested that Mr. Ramos write to Captain Hartnett regarding the materials that had been confiscated from his cell. *Id.* ¶ 13.

Later that day, Mr. Ramos allegedly wrote to Commissioner Semple, Warden Mulligan, and Captain Hartnett regarding the confiscation of his legal materials. *Id.* ¶ 15. As of May 1, 2018, Mr. Ramos allegedly had not received a response to his written requests. *Id.*

On May 1, 2018, Lieutenant Roy allegedly called Mr. Ramos to his office to meet with State Trooper Stebbins. *Id.* ¶ 16. Mr. Ramos allegedly wanted to file criminal charges for the theft of his property. *Id.* ¶ 17. State Trooper Stebbins allegedly would not give Mr. Ramos a receipt "as evidence that [he] had met with Trooper." *Id.* Lieutenant Roy also allegedly refused to assist Mr. Ramos in securing the return of his property. *Id.*

Mr. Ramos allegedly did not receive a disciplinary report for possessing the materials which were confiscated from his cell. *Id.* ¶ 18. Mr. Ramos allegedly obtained the confiscated materials either through legal correspondence or from prison libraries. *Id.* ¶ 19.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
*Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual
allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation
of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual
enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless
distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy
judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and
unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and
interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d
399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d
Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–
02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.    DISCUSSION

Plaintiffs who are incarcerated are required to exhaust administrative remedies before
filing a federal lawsuit related to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall
be brought with respect to prison conditions under section 1983 of this title, or any other Federal
law, by a prisoner confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted."). This exhaustion requirement applies to
all claims regarding "prison life, whether they involve general circumstances or particular
episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

4

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief sought by the incarcerated plaintiff. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90–91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)," and "demands compliance with agency deadlines and other critical procedural rules" (emphasis in the original) (internal citations and quotation marks omitted)). Thus, a prisoner who does not complete the exhaustion process until after a federal action has been filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient.").

An incarcerated plaintiff's failure to exhaust administrative remedies is only excusable if such remedies are, in fact, unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1856, 1858–60 (2016) (the "mandatory language [of 42 U.S.C. § 1997e(a)] means a court may not excuse a failure to exhaust, even to take [special] circumstances into account;" but while "[a]n inmate . . . must exhaust available remedies, [he] need not exhaust unavailable ones," such as one which "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," one which is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (internal citations omitted)).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*,

549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under

the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their

complaints."). Thus, "'[u]nless it is unmistakably clear that the court lacks jurisdiction, or that

the complaint lacks merit or is otherwise defective, . . . it is bad practice for a district court to

dismiss without affording a plaintiff the opportunity to be heard in opposition.'" *Mojias v.*

*Johnson*, 351 F.3d 606, 610–11 (2d Cir. 2003) (quoting *Snider v. Melindez*, 199 F.3d 108, 113

(2d Cir. 1999)) (finding that the district court improperly dismissed a prisoner's complaint for

failure to exhaust administrative remedies without providing plaintiff notice and opportunity to

respond). A court may, however, dismiss a complaint for failure to state a claim where the

allegations on the face of the complaint establish that it is subject to dismissal, even on the basis

of an affirmative defense. *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (a "district

court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on

the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement"

(citing *Jones*, 549 U.S. at 215)).

Here, it is clear that Mr. Ramos failed to exhaust administrative remedies available to him

before filing this action.

The administrative remedies for the State of Connecticut Department of Correction are

set forth in Administrative Directive 9.6. *See* State of Conn. Dep't of Corr., Administrative

Directive 9.6, Inmate Administrative Remedies (eff. Aug. 15, 2013), http://portal.ct.gov/-

/media/DOC/Pdf/Ad/ad0906pdf.pdf ("Admin. Dir."). The type of remedy available to an

individual incarcerated with the State of Connecticut Department of Corrections depends on the

6

nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). Thus, claims related to denial of access to courts or retaliatory conduct by staff are subject to the Inmate Grievance Procedure set forth in Administrative Directive 9.6(6). The grievance procedure for a claim of lost or damaged property is set forth in Administrative Directive 9.6(16) – Property Claim.

Under the Inmate Grievance Procedures set forth in Administrative Directive 9.6(6), a prisoner first must attempt to resolve the matter informally. He or she may attempt to resolve the issue verbally with an appropriate staff member or supervisor. Admin. Dir. 9.6(6)(A). If attempts to resolve the matter verbally are not effective, the individual must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If the individual does not receive a response to the written request within fifteen business days or the he is not satisfied with the response to his request, he may file a Level 1 grievance. Admin. Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Admin. Dir. 9.6(6)(I).

The incarcerated individual may appeal the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner

to Level 2. Admin. Dir. 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1

grievance must be filed within five calendar days from the individual's receipt of the decision on

the Level 1 grievance. Admin. Dir. 9.6(K). The Level 2 appeal of the Unit Administrator's

failure to dispose of the Level 1 grievance in a timely manner must be filed within 65 days from

the date the Level 1 grievance was filed by the incarcerated person. Admin. Dir. 9.6(M).

Level 2 appeals of individuals confined in Connecticut correctional facilities are

reviewed by the appropriate District Administrator. Admin. Dir. 9.6(6)(K). The District

Administrator is required to respond to the Level 2 appeal within thirty business of receipt of the

appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the

grievance procedure or Level 2 appeals to which there has been an untimely response by the

District Administrator. Admin. Dir. 9.6(6)(L). A Level 3 appeal must be filed within five

calendar days from the prisoner's receipt of the decision on the Level 2 appeal. *See id.* A Level 3

appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner

must be filed within thirty-five days of the filing of the Level 2 appeal. Admin. Dir. 9.6(6)(M). A

Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee. Admin.

Dir. 9.6(6)(L).

Plaintiff alleges that, on April 10, 2018, he wrote to Commissioner Semple, Warden

Mulligan, and Captain Hartnett regarding the confiscation of his documents. Compl. ¶ 10. He

states that he had not received a response to his request as of the date he signed this Complaint,

May 1, 2018. *Id.* ¶ 15. Mr. Ramos concedes that he did not file a Level 1 grievance. *Id.* He

alleges that he could not file a grievance because he had not received a response to his written

request to Commissioner Semple, Warden Mulligan, or Captain Hartnett. *Id.* But this is not so.

The grievance procedures provide that a Level 1 grievance must be filed within thirty

calendar days from the date of the occurrence or discovery of the cause of the grievance and

should include a copy of the response to the written request to resolve the matter informally or

explain why the response is not attached. *See* Admin. Dir. 9.6(6)(C). If a prisoner has not

received a response to his attempt to resolve the matter informally, he may indicate that fact in

his Level 1 grievance. *Id.* Thus, Mr. Ramos could have filed a Level 1 grievance, even though he

did not receive a response to his written request to within fifteen business days of when he

submitted the request, but he chose not to file the Level 1 grievance. Mr. Ramos therefore did not

fully exhaust his available remedies regarding his retaliation and access to courts claims prior to

filing this action.

To the extent that Mr. Ramos is claiming a loss of his personal property, the grievance

procedures require that he complete and deposit in the Administrative Remedies box a

Lost/Damaged Property Investigation Form. *See* Administrative Directive 9.6(16)(B)(1),

Property Claim Procedure. A prisoner must file a "property claim[] within one (1) year of when

[he or she] knew or should have known of the loss or damage." *Id.* If the issue involving the lost

or damages property is not resolved after he submits the Lost Property Investigation Form, the

prisoner may pursue his remedies by completing and mailing a Property Claim Form to the Lost

Property Board in Wethersfield, Connecticut. Admin. Dir. 9.6(16)(B)(2) & (3). The Lost

Property Board may take "up to one (1) year from" receipt of "the inmate's property claim . . . to

review, investigate and render a decision." Admin. Dir. 9.6(16)(E). In the event that the Lost

Property Board either denies or the property claim completely or in part, an incarcerated

individual may pursue his remedies by filing, "no later than 60 calendar days after [the]

decision" by the Lost Property Board, file a "claim to the Claims Commissioner" in Hartford,

Connecticut. Admin. Dir. 9.6(16)(F).

Mr. Ramos does not allege that he filed a Lost/Damaged Property Investigation form or

otherwise completed the administrative remedy process as to the documents that he alleges were

taken and lost by officers on April 10, 2018, at any time. Even if he did file a complaint, only

twenty days passed between the day Mr. Ramos's property was allegedly confiscated on April

10, 2018, and the date he signed this Complaint on May 1, 2018. Mr. Ramos therefore could not

have exhausted the administrative process for lost property, which requires waiting for the Lost

Property Board to render a decision and then filing a claim with the Claims Commissioner,

during these twenty days.

Thus, the Court concludes on this record that the claims in the Complaint, including the

retaliation, access to courts, and improper seizure and loss of property claims, are subject to

dismissal for failure to fully exhaust available administrative remedies prior to filing this action.

Before dismissing the complaint, however, the Court will afford Mr. Ramos an

opportunity to address the exhaustion requirement.

On November 5, 2019, Mr. Ramos filed a motion for leave to amend the complaint to add

two new defendants and to clarify and add new information regarding the claims asserted in the

complaint. Mot. for Leave to Amend/Correct Complaint, ECF No. 10 (Nov. 5, 2019). He did not

attach a proposed amended complaint. The Court denied Mr. Ramos's motion "without prejudice

to his refiling a motion to amend/correct along with the proposed amended complaint." Order,

ECF No. 11 (June 8, 2020). Mr. Ramos has not yet filed a new amended complaint.

Consistent with its order on June 8, 2020, the Court will permit Mr. Ramos to file another

motion to amend the Complaint by September 11, 2020, to the extent he can remedy the

deficiencies identified in this Initial Review Order.

### ORDERS

The Court enters the following orders:

(1)      Mr. Ramos's Complaint is **DISMISSED**.

(2)      Mr. Ramos may file an amended Complaint by **September 11, 2020**, if he can

remedy the deficiencies identified in this Initial Review Order.

(3)      If he files an amended complaint, Mr. Ramos shall also file a Notice setting forth

any attempts that he made, **prior to filing this action**, to exhaust administrative remedies as to

each claim in the amended complaint using the Department of Correction's applicable grievance

procedures set forth in Administrative Directive 9.6. **Failure to comply with this order will**

**result in dismissal of the amended complaint without prejudice and without further notice**

**from the Court**.

**SO ORDERED** at Bridgeport, Connecticut this 8th day of August, 2020.

_____/S/_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE